E-FILED
Tuesday, 20 October, 2026 03:25:25 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| **CURRAN-GARDNER TOWNSHIPS PUBLIC WATER DISTRICT, Sangamon County, Illinois,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. 23-cv-3250** |
| **CITY OF SPRINGFIELD, ILLINOIS,** | ) | |
| **Defendant.** | ) | |

**OPINION AND ORDER**

**SUE E. MYERSCOUGH, U.S. District Judge:**

Now before the Court is the Defendant's Motion for Partial Reconsideration (d/e 63) of the Court's Order and Opinion Granting in Part and Denying in Part the City's Motion for Summary Judgment (d/e 62). For the reasons set forth, Defendant's Motion is GRANTED.

## I. BACKGROUND

### A. Factual Background

The Court draws the following facts from the parties' statements of undisputed facts. Springfield is a municipality

located in Sangamon County, Illinois, that operates its own public water supply. See d/e 42, p. 15; d/e 43, p. 8. Curran-Gardner is a public water district originally formed on September 27, 1966 by the Circuit Court for the Seventh Circuit of Illinois, Sangamon County, Illinois. See d/e 39, p. 2; d/e 42, p. 11. The Sangamon County Circuit Court established Curran-Gardner's boundaries, which were expanded at various times into areas not in question or relevant to this case. See d/e 39, p. 3; d/e 42, p. 11.

Curran-Gardner is empowered, as a public water district, to issue bonds pursuant to 70 ILCS 3705/16. See d/e 39, p. 3; d/e 42, p. 11. Curran-Gardner has issued bonds acquired by the United States Department of Agriculture (USDA), rendering Curran-Gardner indebted to the USDA pursuant to 7 U.S.C. § 1926(a) and (b). See d/e 39, p. 3; d/e 42, p. 11. Curran-Gardner has been continuously indebted to the USDA since September 23, 2009. d/e 39, p. 11. Once a district becomes indebted to the USDA under § 1926, it may obtain an exclusive right to provide water within its protected area, provided it can meet the other elements of § 1926 (discussed in Section II.A *infra*). § 1926 provides protections against curtailment of the water district's service area because

curtailment could limit the district's ability to repay its loan to the USDA. Organ Water & Sewer Ass'n v. Moongate Water Co., Inc., 2003 WL 27384903, at *7 (D.N.M. Oct. 8, 2003). § 1926 thus "protect[s] USDA borrowers from municipal expansion." d/e 64, p. 3.

On June 7, 2010, Springfield and Curran-Gardner entered into an Intergovernmental Cooperation Agreement ("the 2010 Agreement"). See d/e 42, p. 16; d/e 43, p. 11. Springfield entered into the 2010 Agreement after Curran-Gardner obtained its first USDA loan. See id. The 2010 Agreement provided that, "[f]or all times following September 23, 2009, all water customers currently being served water by either [Springfield] or [Curran-Gardner] will remain customers of the same respective water service provider going forward." See id. The 2010 Agreement further provided that "[a]ll real property annexed to [Springfield] or under [Springfield]'s annexation agreements in existence prior to September 23, 2009, as shown on Exhibit D attached hereto and incorporated herein, except for the Fraase Family and Neff Minor Subdivisions, will be served by [Springfield]." See id. The 2010 Agreement also set forth terms for providing water service going forward to properties that

were not being provided water service by Springfield prior to September 23, 2009 or that were not annexed to or under an annexation agreement with Springfield prior to September 23, 2009. See id.

Section 18 of the 2010 Agreement stated that the 2010 Agreement was "intended to be a permanent agreement between the Parties, or to be otherwise for the longest period of time permitted by law" and automatically renewed every five years. See d/e 42, p. 17; d/e 43, p. 11. The 2010 Agreement's first automatic renewal period commenced on June 7, 2015, and the second five-year renewal term was to begin on June 7, 2020. See id.

On March 12, 2018, Springfield's City Water, Light & Power division and the Office of Corporation Counsel received a letter from an attorney representing Curran-Gardner at the time stating that Curran-Gardner was terminating the 2010 Agreement, effective June 7, 2020. See id. The 2010 Agreement's term expired on June 7, 2020. See d/e 42, p. 17; d/e 43, p. 10.

**B. Procedural Background**

On August 7, 2023, Curran-Gardner filed a five-Count Complaint in this Court (d/e 1). Curran-Gardner asserted in the

Complaint that Springfield deprived and threatened to further deprive Curran-Gardner of its "federal right under 7 U.S.C. § 1926(b) to be protected from any curtailment or limitation of [its] public water supply services" by "[a]nnex[ing] land within [Curran-Gardner's] state recognized territory" and "[p]rovid[ing] water service to areas within [Curran-Gardner's] territory/boundaries." Id. at pp. 5-6.

Plaintiff and Defendant both seek to provide water to certain disputed territories, of which there are 130. The territories are divided into three categories: "old," "new," and "threatened." d/e 39-1, p. 2. The "old" territories are those to which service was provided by Defendant before the 2009 USDA loan, "new" territories were added after the loan, and "threatened" lots are those which Plaintiff alleges are vulnerable to Defendant's attempts to serve, though it is not currently serving them. Id.; d/e 42, pp. 9-10.

Under § 1926(b), Springfield "is barred from selling water to [a disputed area] if: (1) [Curran-Gardner] is a USDA-indebted rural water association, and (2) [Curran-Gardner] has 'provided or made available' service to" the disputed area. Washington Cnty. Water Co., Inc. v. City of Sparta, Illinois, 77 F.4th 519, 525 (7th Cir. 2023)

(quoting § 1926(b)). Satisfying the latter element requires that the district have a "legal right" to serve the disputed territories. Id. at 521.

Both parties moved for summary judgment. d/e 38-39 (Plaintiff); d/e 41-42 (Defendant). Plaintiff argued that it has the legal right to serve its territory by judicial order. d/e 39, p. 13. Defendant argued that Plaintiff could not have the legal right to serve the disputed territories because Illinois law provides Defendant with the exclusive right to serve territories within one mile of its borders. d/e 42, p. 17. As all 130 disputed territories were allegedly annexed by Defendant before 2009, Defendant argued that Plaintiff could not have had the legal right to serve them. Id. at 17-18.

The Court granted summary judgment to Defendant for the "old" territories, finding that no reasonable factfinder could conclude that Plaintiff was entitled to USDA protection because Plaintiff was not serving the old territories at the time it became indebted to the USDA. d/e 62, p. 17. The Court denied summary judgment as to the "new" and "threatened" territories, finding a genuine dispute of material fact as to whether those territories were

within one mile of Defendant's corporate limits as of 2009. Id. at 42.

## II. LEGAL STANDARD

### A. 7 U.S.C. § 1926

As described above, Defendant is barred from selling water in the Curran-Gardner district if: (1) Plaintiff is a USDA-indebted rural water association, and (2) Plaintiff has "provided or made [service] available" to the territories for which it seeks protection. Washington, 77 F.4th at 525. "Section 1926(b) only protects the service area that Plaintiff had a legal right to serve at the time" it became indebted to the USDA. Tri-Twp. Water Dist. v. City of Trenton, Illinois, 576 F. Supp. 3d 591, 598 (S.D. Ill. 2021), dismissed, 2022 WL 18401372 (7th Cir. May 18, 2022). There is no dispute that Plaintiff has been a USDA-indebted rural water association since September 2009. d/e 39-1, p. 2; d/e 42, p. 18. In relevant part, § 1926(b) reads:

> The service provided or made available through [an indebted district] shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any [municipality] during the term of such loan; nor shall the happening of any such event be the basis of requiring such association to secure any franchise, license, or permit as a condition to continuing

> to serve the area served by the association at the time of the occurrence of such event.

7 U.S.C. § 1926 (emphasis added).

To determine whether Plaintiff has "provided or made available," the Seventh Circuit has applied a two-prong test, which asks (1) whether the association has "pipes in the ground" ready to serve the disputed area within a reasonable time, and (2) whether the association "legal right under state law" to serve the disputed territory. Washington, 77 F.4th at 525.

Determining whether the district has a "legal right under state law" in some cases includes an assessment of whether the district has an exclusive right as against competing providers. Tri-Township, 576 F. Supp. 3d at 596 (holding that Plaintiff could not have a legal right to serve certain territory because "Defendant has the exclusive right, as against Plaintiff, to serve residents in said territory"); Glenpool Util. Servs. Auth. v. Creek Cnty. Rural Water Dist. No. 2, 861 F.2d 1211, 1215-16 (10th Cir. 1988). In other cases, Courts focus on whether the district can comply with regulations requiring a certain quantity and quality of water to determine whether the district has a "legal right" to serve a disputed

territory. Washington, 77 F.4th at 528-29 (holding that a district did not have the legal right to serve a disputed territory because it could not satisfy a state regulation setting out the minimum required production capacity).[1] In the latter kind of case, the "legal right" in application is therefore more akin to an implied authorization to provide service than it is to an exclusive right as against a competing provider. Ross Cnty. Water Co. v. City of Chillicothe, 666 F.3d 391, 401 (6th Cir. 2011) (holding that the state regulator's approval of a plaintiff-district's waterline installation "at least implicitly" gave it a legal right to serve the disputed area where the defendant-city provided no authority for its alleged exclusive right to serve the disputed area); Ross County, 2010 WL 11538014 at *3-4.

A statute's express grant of an exclusive right is clearly a stronger protection than whatever "implicit[]" legal rights can be obtained just by complying with regulations. Ross County, 666 F.3d at 401; Glenpool Util. Servs. Auth. v. Creek Cnty. Rural Water Dist.

---

[1] Note that IEPA regulations did not come up in Tri-Township, nor did Section 11-151-3 come up in Washington. The Courts appeared to apply the standards most relevant to the unique facts before them.

No. 2, 861 F.2d 1211, 1216 (10th Cir. 1988) (describing a state statute authorizing a water district to borrow from the federal government as the state legislature having "authorized the acceptance of a condition rather than having granted an exclusive right"). Nonetheless, the Seventh Circuit (and other Circuits) have relied on both assessments to determine whether the district seeking protection under § 1926 has a legal right to serve a disputed territory. The statutes and regulations considered may simply follow the facts of each case as, for example, there may not be any Court opinion, statute, or regulation that expressly provides any relevant party an exclusive legal right of service. Glenpool, 861 F.2d at 1217 (finding that USDA-indebted water district met the "provided or made available" service prong under § 1926 without having a "state legislative grant of an exclusive right" because it had a water line adjacent to the relevant property and "responsibilities to applicants within its territory").[2] In that case, the next logical

[2] Note that the Court does not consider the parties' "responsibilities" to its customers because that implies a required legal duty rather than a legal right, and that language has not been applied by the Seventh Circuit and District Courts therein. Further, at least one Circuit Court has recently abandoned the "legal duty" test and adopted the "legal right" test. Green Valley Special Util. Dist. v. City of Schertz, Texas, 969 F.3d 460, 477 (5th Cir. 2020); see also Sequoyah Cnty. Rural Water Dist. No. 7 v. Town of Muldrow, 191 F.3d 1197,

consideration would be the parties' compliance with state law and regulations to determine whether a district had a legal right to serve a disputed territory.

But if relevant state statutes bear on the parties' exclusive rights, the Court must take them into account for at least three reasons. First, courts "look to state law to define an association's protected service area under [§ 1926]." Tri-Township, 576 F. Supp. 3d at 595. This is not limited to only regulations setting out the required production capacity. Second, compliance with relevant regulations is always required for any entity providing potable water. To cite that compliance as a basis for determining the existence or priority of legal rights without considering other relevant state law would be to elevate a broad requirement over a narrow enactment tailored to the case at hand. Third, a statute granting one party the exclusive right to serve an area would clarify the priority of the parties' claims in the event that multiple parties could conceivably have a "legal right" to serve an area by complying

---

1201 n.8 (10th Cir. 1999) (stating that "[t]he distinction between a legal *duty* to provide service and a legal *right* to provide service is crucial because, in our view, the latter is always required") (emphases in original).

with relevant regulations. Compliance with broadly applicable regulations does not clarify one entity's legal right as against a competitor.

Accordingly, to determine whether Plaintiff has a legal right to serve the disputed territories, the Court considers state statutes and regulations that bear on both Plaintiff's exclusive rights as against Defendant and on Plaintiff's ability to provide enough water.[3] Washington, 77 F.4th at 524; Tri-Township, 576 F. Supp. 3d at 596. Here, the relevant state statute is Division 151 of Article 11 of the Illinois Municipal Code. This statute grants municipalities an exclusive right as against public water districts to serve residents within one mile of its corporate limits. Read in full, Section 11-151-3 states:

> Except as otherwise provided in this Article, no municipality may furnish water or sanitary sewer service to any territory situated within a public water district and more than one mile from the corporate limits of the

[3] The Court considers both assessments not just because doubts about whether a district is entitled to protection from competition under § 1926(b) "should be resolved in favor of" the district, but also because the "legal right" language does not appear in the statute. Sequoyah, 191 F.3d at 1197; Id. at 1201 n.8 (describing Courts' disagreement on how to satisfy the "provided or made available" service requirement of § 1926(b)); Green Valley Special Util. Dist. v. City of Schertz, Texas, 969 F.3d 460, 481-82 (5th Cir. 2020) (describing how "provided or made available" service is not defined in § 1926) (Owen, C.J., concurring in part and dissenting in part).

> municipality without the district's consent. Nothing in this Section affects the performance by the municipality of any other function in which the district is not engaged.
>
> A municipality that operates a public water supply and furnishes water service has the exclusive right, as against a public water district, to serve residents in the territory within one mile or less of the corporate limits of the municipality but may consent to the district's providing service to such residents.

65 ILCS 5/11-151-3 (1969). As to regulations requiring a certain quantity of production capacity, the parties have cited to Ill. Admin. Code 35, §§ 604.105(a) and 604.230(b), which require that water providers be able to produce "at least 20 percent greater than [its community's] maximum average daily demand." See also Washington, 77 F.4th at 524.

## III. Defendant's Motions

Having set out the statutory language and associated tests under § 1926, including applicable Illinois law and regulations, the Court now assesses the Defendant's Motions for Reconsideration (d/e 63) and Summary Judgment (d/e 42).

## A. Motion for Reconsideration

### 1. Legal Standard

A Motion for Reconsideration can be filed under either Rule 54(b) or Rule 59(e). Rule 54(b) is the proper vehicle for a movant seeking reconsideration for orders "other than final judgments," as here. Katz-Crank v. Haskett, 2014 WL 3507298, at *2 (S.D. Ind. July 14, 2014). Regardless of the rule under which the movant seeks relief, courts apply "largely the same standard." Boone v. Illinois Dep't of Corr., 2023 WL 1529411, at *2 (C.D. Ill. Feb. 3, 2023). That is, "[a] court may grant a motion to reconsider where a movant demonstrates a manifest error of law or fact." Id. However, a Motion for Reconsideration "is not a vehicle to rehash an argument the court has already rejected or to present legal arguments that were not presented earlier." Wilkins v. Just Energy Grp., Inc., 171 F. Supp. 3d 798, 801 (N.D. Ill. 2016).

Defendant contends that the Court committed a manifest error of law and fact when it concluded that it was not clear which of the "new" and "threatened" territories were within one mile of Defendant's corporate limits. d/e 63, p. 1. Defendant further argues that, because all new and threatened territories were

annexed prior to the date of indebtedness, they were by definition within one mile of corporate limits, and thus Plaintiff lacked the legal right to serve those territories as required for protection under § 1926(b). Id. at 1-2.

Plaintiff's response reiterates its argument that any annexation within Plaintiff's service area protected under § 1926(b) should be preempted, as § 1926(b) already protects any annexed territory. d/e 64, p. 3.

**2. Analysis**

The Court now assesses whether it made a manifest error of law or fact when it found a genuine dispute of material fact as to whether Plaintiff had a legal right to provide water to the new and threatened territories. d/e 62, p. 42. The Court's finding was based on the understanding that Plaintiff was disputing the fact of Defendant's annexation of the new and threatened properties. Upon further review, however, Plaintiff is not disputing that the new and threatened properties were within one mile of Defendant's corporate limits as of 2009. Thus, the Court finds that it committed a manifest error of fact when it found a genuine dispute of material fact as to Plaintiff's legal right to serve those territories.

There is no dispute that all 130 disputed territories were within one mile of Defendant's corporate limits as of September 2009. Instead, Plaintiff argues that its legal right to serve those areas "was established when the District was created in 1966" by judicial order of the Sangamon County Circuit Court. d/e 44, p. 6. In other words, according to Plaintiff, even if Defendant legally annexed land within Plaintiff's service area, that did not give Defendant the legal right to serve those areas because Plaintiff already had a legal right to serve them beginning in 1966. Plaintiff argues that the protections of § 1926(b) began upon its indebtedness in 2009, but that the bounds of that protection are defined by the judicial order that created the Curran-Gardner Water District in 1966. d/e 1, ¶8 ("Plaintiff has been continuously indebted to the USDA since 2009[.]"); d/e 39, pp. 10-11, 13; d/e 44, p. 7 ("The District is only enforcing its § 1926(b) rights for areas that are within the District's state law established boundaries as established by a 1966 judicial decree."). In other words, Plaintiff makes a legal argument but does not dispute the facts of the locations of the disputed territories.

While the Court will address Plaintiff's legal argument below, what matters for Motion for Reconsideration is that the Court ruled on the parties' Motions for Summary Judgment with an erroneous view of their positions. Accordingly, the Court must reconsider the Defendant's Motion for Summary Judgment.

**B. Motion for Summary Judgment**

**1. Legal Standard**

The Court now reassesses the Defendants' Motion for Summary Judgment in light of the fact that Plaintiff has not disputed that all 130 disputed territories were within (or within one mile of) Defendant's corporate limits as of 2009. The Court does not reconsider its denial of Plaintiff's Motion for Summary Judgment because Plaintiff has not moved for reconsideration thereof.

Summary judgment is proper if the movant shows that there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A genuine dispute of material fact exists if a reasonable trier of fact could find in favor of the non-moving party. Carroll v. Lynch, 698 F.3d 561, 564 (7th Cir. 2012). When ruling on a motion for summary

judgment, the Court must construe facts in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor. Woodruff v. Mason, 542 F.3d 545, 550 (7th Cir. 2008).

The movant bears the initial responsibility of informing the Court of the basis for the motion and identifying the evidence the movant believes demonstrates the absence of any genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Modrowski v. Pigatto, 712 F.3d 1166, 1168 (7th Cir. 2013). After the moving party does so, the non-moving party must then go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (quotation and footnotes omitted).

Accordingly, to prevail on its Motion for Summary Judgment, Defendant must show that no genuine dispute exists as to any material fact as to whether (1) Plaintiff is a USDA-indebted rural water association and (2) Plaintiff has 'provided or made available' water service to the disputed areas. Washington, 77 F.4th at 525. The Court has already held that Plaintiff is not a USDA-indebted association with respect to the "old" properties because the Plaintiff

was not serving those properties when it became indebted to the USDA. d/e 62, p. 17. Pub. Water Supply Dist. No. 3 of Laclede Cnty., Mo. v. City of Lebanon, Mo., 605 F.3d 511, 519 (8th Cir. 2010) ("[C]ontinuing to provide service to customers [Defendant] began serving before [Plaintiff] obtained the USDA loan does not violate § 1926(b)."); Sequoyah, 191 F.3d at 1202 ("Plaintiff must have made service available prior to the time an allegedly encroaching association began providing service in order to be eligible for § 1926(b) protection.") (internal quotations omitted). Thus, the only way in which Defendant could prevail on summary judgment is by demonstrating that there is no genuine dispute of material fact relevant to determine whether Plaintiff has provided or made available service to the disputed areas under § 1926.

**2. Analysis**

As previously stated, the Seventh Circuit uses a two-prong test to determine whether a district has provided or made service available to a disputed area. The test asks (1) whether the association has "pipes in the ground" ready to serve the disputed area within a reasonable time, and (2) whether the association has the "legal right under state law" to serve the disputed territory.

Washington, 77 F.4th at 525. For the latter element, the legal right to serve the disputed territory, the Seventh Circuit and its District Courts have considered applicable state law governing the parties' exclusive rights and the district's capacity to satisfy regulations requiring a certain amount of production capacity. Washington, 77 F.4th at 525; Tri-Township, 576 F. Supp. 3d at 595-96.

The Court holds that Plaintiff does not have a legal right to serve the disputed territories. Even if Plaintiff can demonstrate that it can satisfy Illinois Environmental Protection Agency (IEPA) regulations, Plaintiff has not disputed that all 130 disputed territories were within one mile of Defendant's corporate limits as of September 2009. Section 11-151-3 therefore grants Defendant an exclusive right to serve the disputed territories. Accordingly, Plaintiff cannot be found to have a legal right to serve those territories under § 1926. The express, exclusive right of service granted to Defendant under Section 11-151-3 trumps any right Plaintiff could purport to hold merely by complying with IEPA regulations and by citing the judicial order creating the Curran-Gardner district. The Court therefore need not assess the parties'

expert reports analyzing whether Plaintiff can provide enough water to comply with IEPA regulations.

The Court's reasoning follows its analysis of the various tests of whether the district seeking protection under § 1926 has a legal right to serve a disputed area. As described in Section II.A *supra*, to hold that Plaintiff has a "legal right" to serve the disputed territories based solely on its capacity to produce the required quantity of water would require the court to ignore that a state statute expressly provides Defendant the right to serve those same territories. Further, Plaintiff is always required to provide enough water regardless of the territories it serves and regardless of whether those territories are protected under § 1926. Thus, to find that Plaintiff's ability to comply with IEPA regulations confers a "legal right" of service as against Defendant would elevate a universal baseline requirement over a specific statute that expressly governs the case at hand. Finally, Tri-Township is analogous. There, the Court held that the plaintiff could not have a legal right to serve a disputed territory because "Defendant ha[d] the exclusive right, as against Plaintiff, to serve residents in said territory

pursuant to [Section 11-151-3].” Tri-Township, 576 F. Supp. 3d at 596.

### 3. Plaintiff’s Additional Arguments

Though not required for the Court’s ruling, the Court provides additional analysis of Plaintiff’s arguments for context.

#### a. Selecting the relevant date

Plaintiff asserts that its “legal right” to serve the disputed territories “was established when the District was created in 1966.” d/e 44, ¶ 23.

This argument misses three key points. First, § 1926(b) protects only the service area that Plaintiff had a legal right to serve “at the time Plaintiff became indebted to the federal government.” Tri-Township, 576 F. Supp. 3d at 598. This flows directly from the language of § 1926, which protects a district’s service area only “during the term of [the USDA] loan.” 7 U.S.C. § 1926. Plaintiff has acknowledged that it did not become indebted to the USDA until September 2009, more than 40 years after the judicial order creating the Curran-Gardner Water District in September 1966. d/e 39-1, p. 2; d/e 42, p. 18. Accordingly, § 1926 protects the

areas for which Plaintiff had a legal right to serve as of September 2009, not September 1966. d/e 39, p. 2.

Second, the Court in Tri-Township expressly rejected the argument that a judicial order setting Plaintiff's service boundaries trumps a state statute granting another party an exclusive right to serve areas within those boundaries. Tri-Township, 576 F. Supp. 3d at 597-98 ("The fact that the Order setting forth Plaintiff's jurisdictional boundaries included the disputed area is not sufficient to circumvent state law."). There, as here, the relevant state law is Section 11-151-3, which grants Defendant an exclusive right to serve the disputed territories. Tri-Township, 576 F. Supp. 3d at 595-96 (applying Section 11-151-3 and holding that Plaintiff did not have an exclusive right to serve certain territories within its boundaries because those territories were within one mile of the municipality's corporate limits when the district became indebted to the USDA).

Third, the judicial order and associated exhibits creating the Curran-Gardner district contain no language asserting or even implying that they create an exclusive right of service. d/e 39-2. Though still relevant evidence of Plaintiff's implied authorization to

serve the disputed territories, the judicial order is not sufficient to trump Section 11-151-3.

**b. Preemption**

Though not required for the Court's ruling, the Court endeavors to provide clarity on the preemption issue per the parties' request. Plaintiff asserts that Section 11-151-3 is "entirely preempted" by § 1926(b), and accordingly cannot limit Plaintiff's service area. d/e 64, p. 3. Plaintiff also asserts that the Court "has recognized that [Section 11-151-3] is preempted by § 1926(b) by limiting the effect of [Section 11-151-3] to areas within one mile of Springfield's 2009 Limits[.]" d/e 64, p. 7.

Section 11-151-3 is not "entirely preempted" by § 1926. Rather, as the Tri-Township court described, courts "look to state law to define an association's protected service area under [§ 1926]." Tri-Township, 576 F. Supp. 3d at 595; Rural Water Sys. No. 1 v. City of Sioux Ctr., Iowa, 967 F. Supp. 1483, 1528-29 (N.D. Iowa 1997), aff'd sub nom. Rural Water Sys. No. 1 v. City of Sioux Ctr., 202 F.3d 1035 (8th Cir. 2000) ("[N]o federal statute or regulation defines 'made service available' within the meaning of § 1926(b)."). That is, Section 11-151-3 is part of the analysis to

determine the geographic scope of a district's protections under § 1926. § 1926 determines the temporal scope, or the correct date upon which to base the Plaintiff's service area (the date of indebtedness), while state law informs the geographic scope of that protection. 7 U.S.C. § 1926. A federal statute cannot "entirely preempt" a state statute that informs the scope of that same federal statute.

However, Plaintiff is correct that § 1926 would preempt a hypothetical attempt by Defendant to serve a territory that is both annexed after September 2009 and within the boundaries of Plaintiff's protected service area. Xenia Rural Water Dist. v. City of Johnston, Iowa, 467 F. Supp. 3d 696, 707-08 (S.D. Iowa 2020) ("[W]hen a rural water provider [becomes indebted], it receives § 1926(b) protection based in part on its legal rights as defined by state law at that time, but any subsequent attempt to shrink that protected service area during the lifetime of the loan is preempted.") (describing Rural Water Sys. No. 1, 967 F. Supp. at 1528-30). In that scenario, assuming Plaintiff meets the elements for protection under § 1926, Plaintiff would have an exclusive right to serve territories within the boundaries of that protection as determined by

state law from the time of indebtedness. But if Defendant annexed one such territory, it would come within Defendant's corporate limits, and Section 11-151-3 would provide Defendant the exclusive right to serve that territory. Plaintiff could thus claim an exclusive right under federal law (§ 1926) while Defendant could claim an exclusive right under state law (Section 11-151-3). The Court could not enforce the exclusive rights arising out of both federal law and state law at the same time. That is conflict preemption. Pittsburg Cnty. Rural Water Dist. No. 7 v. City of McAlester, 358 F.3d 694, 716 (10th Cir. 2004) ("There is [] preemption of any local or state law that purports to take away from an indebted rural water association any territory" protected by § 1926(b).).

**c. Conclusion**

In sum, Defendant has presented evidence sufficient to establish that there is no genuine dispute of material fact relevant to whether Plaintiff has a legal right to serve the disputed territories. Because Plaintiff cannot be found to have a legal right to serve the disputed territories, Plaintiff cannot satisfy the "provided or made available" service element under § 1926(b).

Because Plaintiff cannot satisfy the elements for protection under § 1926(b), Defendant is entitled to judgment as a matter of law.

## IV. Conclusion

Defendant has demonstrated that the Court made a manifest error in concluding that Plaintiff was disputing the fact of Defendant's annexations of the 130 disputed properties and their locations. Defendant has also presented sufficient evidence that there is no genuine dispute of material fact as to whether Plaintiff has a legal right to serve the disputed territories, and accordingly that it is entitled to judgment as a matter of law.

For the reasons stated, Defendant's Motion for Reconsideration (d/e 63) is GRANTED.

Upon reconsideration, Defendant's Motion for Summary Judgment is GRANTED.

**ENTERED: October 20, 2026.**
**FOR THE COURT:**

/s/ Sue E. Myerscough
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**